IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CORY PAIGE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16−cv−1315−MJR |
| | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **JOHN DOE #1,** | ) | |
| **KIMBERLY BUTLER,** | ) | |
| **TROST,** | ) | |
| **CHRISTOPHER MATHIS,** | ) | |
| **KELLY PIERCE,** | ) | |
| **SHERRY BENTON,** | ) | |
| **GAIL WALLS,** | ) | |
| **ILLINOIS DEPARTMENT OF** | ) | |
| **CORRECTIONS,** | ) | |
| **LOUIS SHICKER, and** | ) | |
| **JOHN DOE #2** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Plaintiff Cory Paige, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks injunctive relief and monetary damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

1

> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

Plaintiff originally filed suit on July 28, 2016 in Case No. 16-cv-858-SMY-RJD. On December 6, 2016, the Court determined that Plaintiff had brought claims unrelated to one another and severed several counts into the present matter. (Doc. 1).

Plaintiff alleges that the Illinois Department of Corrections ("IDOC"), John Doe #1 (Director), and medical director Shicker have known that Menard is understaffed and not meeting its responsibility to provide medical care and access since 2010, when the lawsuit *Lippert v. Wexford* was filed. (Doc. 2, p. 24). Plaintiff further alleges that Butler turned a blind eye to the deficient medical conditions as the former Warden of Menard. *Id.* Plaintiff also filed

grievances, which were reviewed by the IDOC, Shicker, Doe #1, and Butler regarding Plaintiff's inadequate medical care. (Doc. 2, p. 25). The deficient conditions that Plaintiff complained of are due in part to a policy of Wexford Health Sources, Inc. that allows inmates to be treated inadequately for cost cutting purposes. (Doc. 2, pp. 25-26).

Out of the blue, from 2012 until 2015 Plaintiff began experiencing migraine-like headaches and vision loss. (Doc. 2, pp. 26, 28). He was given Tylenol and referred to a doctor. *Id*. The doctor prescribed Plaintiff pain medication, but disregarded the fact that Plaintiff did not have a history of migraines, dizziness, diplopia, or blurry vision. *Id*. Plaintiff had a follow-up visit 30 day later and made it known that the pain medication he had been prescribed was not working. (Doc. 2, pp. 26-27). Plaintiff also told staff that he was still experiencing dizziness and blurred vision. (Doc. 2, p. 27). Plaintiff alleges that an MRI or CT scan should have been considered at that time. *Id.*

Plaintiff continued to put in sick call slips. *Id*. Eventually, he was referred to John Doe #2 (eye doctor). (Doc. 2, p. 27-28). Despite seeing Doe #2, Plaintiff's vision problems worsened. (Doc. 2, p. 28). He also continued to experience severe headaches and blacked out on a few occasions. *Id.* Doe #2, Wexford, and Trost persisted in their course of treatment and would not discontinue treatment that was not working or order further testing. *Id*. Plaintiff was given nothing more than Excedrin for Migraines for his headaches. (Doc. 2, p. 29).

After 3 years of complaining about headaches and vision loss, Trost and Wexford finally approved an MRI. (Doc. 2, p. 28). The MRI showed that Plaintiff had a tumor in his brain, specifically on his pituitary gland. (Doc. 2, pp. 29-30).

Plaintiff alleges that the IDOC, John Doe #2 (Director), Shicker, and Butler all knew that Plaintiff was not receiving adequate medical care and turned a blind eye to Plaintiff's complaints

about inadequate medical treatment. *Id.* Trost told Plaintiff during the course of his treatment for his tumor that "we normally don't spend this much money on an inmate." (Doc. 2, p. 30).

On April 12, 2016, Plaintiff went to see a specialist at an outside hospital who recommended radiation treatment, which may result in a loss of function on Plaintiff's pituitary gland. (Doc. 2, p. 31). Plaintiff believes the need for radiation may have been eliminated had the tumor been discovered earlier. *Id.*

Plaintiff was continually frustrated when he tried to resolve these issues through the grievance process. (Doc. 2, p. 33).

## **Discussion**

The prior Order severing claims into this case divided up Plaintiff's claims into specific Counts. (Doc. 1). Specifically, that Order found 6 claims should be severed into this case:

**Count 9 –** Eighth Amendment deliberate indifference claim for improperly staffing the health care unit against Defendants Wexford, Walls, and Dr. Trost;

**Count 10 –** Eight Amendment deliberate indifference to a serious medical condition claim against Defendants IDOC, Shicker, John Doe #1 (director), and Butler for failing to address his grievances about vision loss and chronic migraines;

**Count 11 –** Eighth Amendment deliberate indifference claim against Defendants IDOC and Dr. Trost for delay in treatment and failure to provide sufficient treatment that lead to further deterioration of his conditions (vision loss and chronic head pain);

**Count 12 –** Eighth Amendment deliberate indifference claim against John Doe #2 (eye doctor) for failing to adequately treat Plaintiff's deteriorating vision;

**Count 13 –** Intentional infliction of emotional distress claim against Wexford for maintaining a custom or policy of overworking staff and understaffing facilities that ultimately led to improper treatment or a delayed diagnosis of Plaintiff's brain tumor; and,

**Count 14 –** First and Fourteenth Amendment claims against Defendants John Doe #1 (director), Butler, Mathis, Pierce, and Benton for obstructing or preventing Paige's access to the grievance system to address his medical needs.

Upon further review of the Complaint, the Court also finds it appropriate to add a count not described in the original Order severing the claims:

**Count 15 –** Wexford Health Sources has an unconstitutional policy that requires medical staff to cut costs in lieu of providing adequate treatment to prisoners in violation of the Eighth Amendment.

Turning to **Count 9,** in order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eight Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Deliberate indifference may be shown where medical providers persist in a course of treatment known to be ineffective. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

Plaintiff's first claim is that defendants were deliberately indifferent to his serious medical needs when they understaffed the health care unit. However, Plaintiff has not adequately alleged that the understaffing caused the harm he complains of, namely that his brain

5

tumor went undiagnosed for 3 years. Plaintiff has not alleged that he missed appointments due to understaffing or that his appointments were delayed. His Complaint specifically states that he saw a doctor within 30 days of reporting the migraines. In fact, Plaintiff alleges that he was not given an MRI for 3 years due to cost-cutting policies, not understaffing policies. The Court therefore finds that Plaintiff's allegations that his injury was caused by understaffing to be conclusory and not adequately supported by his factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). **Count 9** will therefore be **DISMISSED without prejudice**.

**Count 10** will survive threshold review, but first the Court must take a slight detour into a discussion of proper defendants. Specifically, the IDOC must be dismissed from this Count and all other Counts at this time. Plaintiff cannot maintain his suit against the IDOC, because it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same).

Plaintiff's claims for damages against certain supervisory employees fail for the same reason. Plaintiff's Complaint specifically states that he is bringing claims against all individual defendants in both their official and individual capacities. (Doc. 2, p. 36). Those individuals are

not "persons" in their official capacities under § 1983 for the purposes of this suit. Plaintiff can only bring claims against individuals that were personally involved in the deprivation of which he complains. There is no supervisory liability in a § 1983 action; thus to be held individually liable, a defendant must be "'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Therefore, to the extent that Plaintiff has attempted to bring claims against any defendant in their official capacity, those claims must be dismissed, with one exception.

The only time it is appropriate to name a defendant in his or her official capacity is when a plaintiff seeks injunctive relief. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). In that case, a plaintiff need not allege any specific involvement and it is irrelevant whether the party participated in the alleged violations. *Id.* (citing *Houston v. Sheahan*, 62 F.3d 902, 903 (7th Cir. 1995); *Ogden v. United States*, 758 F.2d 1168, 1177 (7th Cir. 1985)). Therefore, the Court will direct the Clerk to add the current warden of Menard, Jeff Hutchinson, as a party to this litigation for the purposes of Plaintiff's request for injunctive relief. The claims go forward against all other named Defendants in their individual capacities only.

Returning to Plaintiff's deliberate indifference claim in **Count 10**, Plaintiff seeks to hold Shicker, Butler, and John Doe #1 (director) liable. Plaintiff must allege that they were aware of his serious medical need. Plaintiff has alleged that Doe #1, Shicker, and Butler knew about certain third party reports that identified deficiencies in the medical care provided at Menard, but his allegation that they actually knew about his headaches and vision loss fails because it is conclusory. Plaintiff states that he filed grievances that would have put Doe #1, Shicker, and Butler on notice of his conditions. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015)

7

("An inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of the constitutional deprivation."). But he also alleges that those grievances are attached to his Complaint. The Court can only find one grievance that relates to Plaintiff's migraines and vision loss. (Doc. 2-1, pp. 97-100). The grievance alleges that Plaintiff sent it to Butler and got no response, but there is no indication in the grievance itself that Shicker or Doe #1 ever saw the grievance.[1] As Plaintiff has not included any other allegation that would make it plausible that Shicker or Doe #1 knew about his migraines and vision loss, Plaintiff has not adequately stated a claim against those Defendants, and they will be dismissed from Count 10 without prejudice.

But as to Butler, Plaintiff's has sufficiently alleged that she knew about his medical condition via grievances he submitted. Further he makes allegations that she may have been deliberately indifferent to the migraines and vision loss by failing to take action. Therefore **Count 10** will proceed against Butler alone.

Likewise, Plaintiff has adequately made claims against Trost and John Doe #2 (eye doctor) in **Counts 11 and 12**. Plaintiff has alleged that Trost was aware of his serious headaches and vision loss. He has further alleged that Trost should have been aware that Plaintiff's medical history showed no history of migraines, and investigated further on that ground. Instead, Trost started Plaintiff on a course of conservative treatment, which he continued even after it become apparent that the treatment was not working and further testing was needed. This is sufficient to state a claim for deliberate indifference against Trost and **Count 11** will proceed.

The same analysis applies to John Doe #2 (eye doctor). Plaintiff alleges that his complaints of vision loss were treated conservatively for a long period of time, even though his

---

[1] The Court does not mean to suggest that the grievance adequately exhausts the claims against Butler at this time. That remains an open question.

vision continued to deteriorate and failed to respond to Doe #2's treatment. Because Plaintiff has alleged that the eye doctor also persisted in a course of treatment known to be ineffective, and that this persistence delayed further diagnostic testing, Plaintiff's claim against Doe #2 will also be permitted to proceed in **Count 12**.

**Count 13** arises under state law and the Court considers that claim under supplemental jurisdiction. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). The Court will therefore consider Plaintiff's state law claim.

Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'" *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So. 2d 396 (Fla.1958)). *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988); *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized

community." *Honaker*, 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

It is clear, however, that "the tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " *McGrath*, 127 Ill.Dec. 724, 533 N.E.2d at 809 (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). Instead, the conduct must go beyond all bounds of decency and be considered intolerable in a civilized community. *See Kolegas v. Heftel Broad. Corp.,* 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201, 211 (1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 242 Ill.App.3d 707, 182 Ill.Dec. 876, 610 N.E.2d 745, 749 (1993). Thus, to serve as a basis for recovery, the defendant's conduct must be such that the "'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim[:] Outrageous!' " *Doe v. Calumet City,* 161 Ill.2d 374, 204 Ill.Dec. 274, 641 N.E.2d 498, 507 (1994) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)) (internal quotation marks omitted).

Here, Plaintiff's claim fails. As an initial matter, Plaintiff has not alleged that he actually suffered emotional distress due to Wexford's policies. He has also alleged that his doctors did not know he had a tumor until he had an MRI showing the tumor. This suggests that the delay in treatment was not intentional, and the Seventh Circuit has been very clear that neither negligence nor recklessness will support a claim of intentional infliction of emotional distress. *Dunn v. City of Elgin, Ill.*, 347 F.3d 641, 651 (7th Cir. 2003). Furthermore, Plaintiff has not alleged that he was denied appointments or that appointments were delayed due to staffing vacancies. This creates two issues: 1) complaining to overworked employees is not the type of conduct that

would cause an average person to resentfully exclaim "outrageous!" and 2) Plaintiff has not alleged that his harm was caused by the policy of overworking staff and understaffing facilities as discussed in further detail above. Plaintiff's claim for intentional infliction of emotional distress fails because he has not alleged sufficiently outrageous conduct and because he has not alleged that the conduct caused either emotional distress or even the physical harm of which he complains. **Count 13** will be dismissed with prejudice.

**Count 14** will also be dismissed with prejudice. Plaintiff alleges that multiple defendants have interfered with his access to the grievance system. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Court notes that in some instances, failure to respond to grievances may constitute deliberate indifference to a plaintiff's medical condition. *See Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015). But Plaintiff's contention here is that his due process rights were violated because he was specifically denied access to the grievance system itself. That is not a claim upon which relief could be granted and accordingly, it must be dismissed with prejudice.

The Order severing the claims into this case discerned no other counts. However, upon further review of the Complaint, Plaintiff clearly states that "Wexford staffed [a] health care unit that has a policy to look for ways to save money first before providing a treatment." (Doc. 2, p. 25). Plaintiff describes the contours of this claim further on pages 26-27 of his Complaint. The Court therefore finds it appropriate to add a **Count 15** to this case at this time.

Wexford may be liable under a municipality theory of liability. For purposes of § 1983, the courts treat "a private corporation acting under color of state law as though it were a municipal entity," *Jackson v. Ill. Medi–Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002), so Wexford will be treated as a municipal entity for this suit. "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)).

Here, Plaintiff has alleged that Wexford had a policy of cutting costs and because of that policy, Plaintiff's medical care providers continued to treat his migraines and vision loss conservatively long after it should have been apparent that their treatment was ineffective. Unlike Plaintiff's other policy claim, there is a reasonable inference that Plaintiff's harm could have been caused by such a policy. The Court finds that Plaintiff has adequately articulated a *Monell* claim based on his allegations that Wexford had a policy of promoting cheap treatment over effective treatment.

## Disposition

**IT IS HEREBY ORDERED** that Counts 10-12 and 15 survive threshold review. However, Defendant Illinois Department of Corrections ("IDOC") is **DISMISSED** from all claims **with prejudice**. Count 9 is **DISMISSED without prejudice**. Counts 13-14 are **DISMISSED with prejudice**. Walls is **DISMISSED without prejudice.** Shicker and John Doe 1 are **DISMISSED** from Count 10 **without prejudice**; although the claims against them in Count 14 are dismissed **with prejudice**. Mathis, Pierce, and Benton are **DISMISSED with prejudice**.

The Clerk of Court is **DIRECTED** to **ADD** Defendant "Jeff Hutchinson" to the Complaint for the purposes of injunctive relief only. There are no claims against Hutchinson in his individual capacity and he is not liable for monetary damages.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Butler, Trost, Wexford Health Sources, Inc., and Hutchinson: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe #2) Defendant until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court,

who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: January 12, 2017**

s/ MICHAEL J. REAGAN
**U.S. District Judge**